1  THOMAS P. O'BRIEN
   United States Attorney
2  ROBB C. ADKINS (SBN 194576)
   Assistant United States Attorney
3  Chief, Santa Ana Office
   ANDREW STOLPER (SBN 205462)
4  Assistant United States Attorney
        411 West Fourth Street, 8th Floor
5       Santa Ana, CA  92701-4599
        Telephone:  (714) 338-3593
6       Facsimile:  (714) 338-3708
        Robb.Adkins@usdoj.gov
7
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9                  UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

12  UNITED STATES OF AMERICA,   ) No. SA CR 08-139-CJC
                                )
13           Plaintiff,         ) **GOVERNMENT'S BRIEF RE: CASE**
                                ) **MANAGEMENT ORDER**
14           v.                 )
                                ) (PROPOSED CASE MANAGEMENT ORDER
15  HENRY T. NICHOLAS, III,     ) filed concurrently herewith)
    and WILLIAM J. RUEHLE,      )
16                              )
             Defendants.        )
17                              )
    _____ )
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

During a status conference on July 1, 2008, the Court ordered a trial date of April 7, 2009.  In the Minute Order, the Court requested that the government prepare, serve, and lodge a proposed case management schedule.  Since the hearing, the government has been meeting and conferring with counsel for defendants in an effort to reach agreement on a proposed case management schedule, or alternatively, to narrow the areas of dispute.

The parties have reached agreement on many scheduling matters, reflected in Section II.A, below.  The government provides its reasoning regarding remaining areas of dispute in Part II.B, below.  The government also provides herewith a proposed Case Management Order consistent with the government's position.

**II.  CASE MANAGEMENT SCHEDULE**

**A.   Schedule Agreed to By the Parties**

The following table provides the schedule to which the parties have reached agreement.  The portions in bold represent the government's position regarding scheduling with which defendants do not agree.

///

///

///

| DATE | EVENT |
|------|-------|
| 08/04/08 | Government's disclosure of Rule 16 materials requested by the defendants,[1] *Brady* materials, and preliminary Jencks Act materials (including SEC testimony and materials from the internal investigation). |
| 10/20/08 | Motions other than those related to discovery (which may be filed at any time as necessary) and motions in limine.[2] **This includes severance motions.** |
| 11/10/08 | Opposition briefs |
| 11/24/08 | Reply briefs |
| 12/12/08 | Proposed voir dire and jury questionnaire |
| 01/07/09 | Status conference |
| 02/17/09 (seven weeks before trial) | Government's disclosure of remaining Jencks Act materials (grand jury testimony **and FBI 302s). Defendants disclosure of Rule 16(b)(1) and Rule 26.2 materials.** |
| 02/23/09 | Motions in limine |
| 03/09/09 | Opposition briefs |
| 03/16/09 | Reply briefs |
| 03/23/09 (two weeks before trial) | Final pretrial conference, hearing on motions in limine, proposed jury instructions, government exhibit list and witness list, **defendant's exhibit list and witness list.** |
| 04/07/09 | Trial |

According to the agreed-upon schedule above, the government is producing on August 4, 2008 -- more than eight months before trial -- the vast majority of the discovery in

---

[1] Defendants presently have not requested expert disclosures pursuant to Rule 16(a)(1)(G). If they subsequently request such disclosures, the parties will attempt to reach agreement on the timing of expert disclosures.

[2] The government reserves the right to argue that any motion to disqualify government counsel is untimely.

this case.  This discovery consists of many gigabytes of Rule

16 material, comprising millions of pages.  Also being produced

are dozens of written reports of interviews of witnesses in

Broadcom's internal investigation of option backdating, as well

as all depositions and exhibits from the SEC investigation of

this matter from its inception to the filing of its Complaint.

All of these materials will be produced to defendants

electronically.  Moreover, the government agrees to produce

preliminary Jencks Act materials extraordinarily early, more

than eight months before it is required to be produced under

the Act.

### B.    The Government's Position on Disputed Matters

Despite attempts to reach agreement between the parties on

all scheduling matters, the following areas remain in dispute:

### 1.    Jencks and Reciprocal Jencks

On August 4, 2008, the government will be voluntarily

producing over 35 interview reports made by Broadcom's internal

investigators, along with all the SEC testimony taken prior to

the complaint being filed.  Defendants' position is that the

Court should order the government to turn over Jencks Act

materials, in addition to those described above, including FBI

Form 302s and other government interview memoranda, also on

August 4, 2008.  Under the Jencks Act, 18 U.S.C. § 3500, et

seq., it is impermissible to order the government to turn over

Jencks Act materials prior to the conclusion of the witness's

testimony.  United States v. Mills, 641 F.2d 785, 790 (9th Cir.

1981) (On mandamus, the circuit found that the "trial court

exceeded its authority by ordering the production of these

4

statements over the government's objection" prior to the
witness testifying).

Notwithstanding the government's statutory rights, the
government will produce Jencks on February 18, 2009 – a full
seven weeks before the trial commences.  This is a sufficient
time for defendants' exceptional legal teams to review the
interview statements in preparation for trial.  This production
will be earlier than is customary in this District in an effort
to ensure that the case can go forward on April 7, 2009.
Moreover, as set forth above, more than eight months before
trial, the government is producing over 35 interview reports
from Broadcom's internal investigation, including reports of
many, if not most, of the witnesses the government presently
intends to call at trial.  In addition, the government will
produce, also eight months early, all the testimony taken
during the SEC's investigation of options backdating at
Broadcom, along with their associated exhibits.  The government
is well exceeding its Jencks Act obligations.

The government's obligations under the Jencks Act are
mirrored by defendants' obligations to provide to the
government whatever witness statements they have collected
pursuant to Federal Rule of Criminal Procedure 26.2.  Despite
demanding the government provide its witness statements eight
months before trial, defendants have taken the position that
they will provide witness statements in the middle of the case,
after the government's case has rested.  If the government is
going to undertake to turn over witness statements eight months
before trial and additional statements more than seven weeks

5

1  before required by statute, fairness requires that defendants

2  undertake a good faith effort to turn over their witness

3  statements prior to trial.

4            **2.    Brady**

5            As shown in the table above, the parties have agreed that

6  the government shall produce Brady material on August 4, 2008.

7  Defendants have taken the position that Brady material that is

8  within any Jencks Act material must be produced on August 4,

9  2008 as well.  Defendants' position is contrary to the law in

10 the Ninth Circuit.  In terms of the timing of a disclosure that

11 is both Jencks and Brady, the timing of the Jencks Act

12 disclosure controls.  United States v. Jones, 612 F.2d 453, 455

13 (9th Cir. 1979) ("When the defense seeks evidence which

14 qualifies as both Jencks Act and Brady material, the Jencks Act

15 standards control.").  However, the government has represented

16 to defendants that, at this time, it has identified no Brady in

17 statements that fall under the Jencks Act.  The government is

18 aware of its Brady obligations and will continue to abide by

19 them.  Nevertheless, in addition to the voluminous discovery

20 and Jencks Act production defendants will receive on August 4,

21 2008, they will be receiving additional Jencks seven weeks

22 before trial.[3]

23 ───────────────

24            [3] In the course of meet and confer, before even receiving
   any discovery in this case, defendants have attempted to obtain
25 concessions regarding discovery and defenses to potential
   substantive motions, such as motions for a bill of particulars,
26 as discussed below.  The government does not believe it is
   appropriate for defendants to attempt to convert a scheduling
27 matter into a vehicle to litigate possible future motions.  The
   government respectfully suggests that the Court should enter the
28 proposed scheduling order and defendants should thereafter file

### 3.   Rule 16 Discovery

On August 4, 2008, the government will be making a production of Rule 16 materials.  This production will include searchable databases of defendants' emails during the relevant time-frame, all of Broadcom corporate resolutions, the documents received from Broadcom's outside auditors, and all the documents gathered by the SEC during its investigation. The government's production is entirely electronic.

Despite receiving the government's Rule 16 discovery eight months before trial, defendants have taken the position that they will not fulfill their obligations under Rule 16, which mirror the government's, until the first day of trial.  Thus, in the middle of trial, the government would be reviewing defendants' potentially expansive discovery for the first time. This is unfair, incongruous with the government's early Rule 16 production, and may prejudice the government.  Defendants will, no doubt, seek to introduce evidence during the government's case-in-chief.  Unless the government receives defendants' Rule 16 discovery in advance of trial, defendants may seek to admit documents at trial that the government never had a fair opportunity to review.  This prejudices the government's ability to file motions in limine, make meaningful objections, and amounts to a trial by ambush.  As the government has made its Rule 16 production eight months before trial, the defendants should be obliged to make their Rule 16 production on February 17, 2009, seven weeks before trial.

whatever motions they deem appropriate as issues arise.  The government will respond to the issues raised in those motions.

1

### 4.   Witness and exhibit lists

2        As shown in the table above, the government has proposed a

3   mutual exchange of witness and exhibit lists with the

4   defendants two weeks before trial, on March 23, 2009.  This is

5   a common accommodation in this District.  Defendants have

6   declined the government's offer to mutually exchange witness

7   and exhibit lists and have taken the position that they will

8   only provide a tentative exhibit list (excluding impeachment)

9   on the first day of trial and a tentative witness list <u>after</u>

10  the close of the government's case-in-chief.

11       Providing the government an exhibit list on the first day

12  of trial, again, reduces the government to reviewing defense

13  exhibits only after the trial is underway, meaning the

14  government will not have a fair chance to challenge evidence

15  that defendants are seeking to admit during the government's

16  case-in-chief.  There is no valid reason for defendants to

17  withhold their exhibit list until the trial commences, and

18  defendants have provided none.  Similarly, by waiting until the

19  end of the government's case to provide a witness list leaves

20  the government without a fair opportunity to prepare for the

21  defense case and could necessitate an unnecessary delay in the

22  middle of trial.  For the government to cross-examine defense

23  witnesses it needs to pull together the relevant documents and

24  impeachment material.  As defendants will have the opportunity

25  to undertake this preparation two weeks before trial, so should

26  the government.

27       The expected argument from defendants is that they cannot

28  produce any materials prior to trial because such a

8

determination depends on the government's case-in-chief.
Defendants have been aware of this case and have had excellent
counsel for a lengthy period of time prior to indictment.  They
have been armed with voluminous documents during that time and
have been involved in SEC litigation of related conduct, of
which they now oppose a stay.  The government's 65-page
indictment is detailed and informs defendants of the charges
they face.  In addition to the materials already in defendants'
possession, the government is providing voluminous discovery
well before trial.  Thus, defendants have the resources to
prepare their case and will undoubtedly have anticipated
witnesses and exhibits.

Indeed, at the July 1, 2008 status conference, counsel
took the position that the trial length would be greater than
that estimated by the government, explaining that there will be
a lengthy defense case.  The government's position is that
defendants should disclose the witnesses and exhibits that they
anticipate in good faith will be used in the lengthy case they
intend.  Defendants should be subjected to the same good faith
exchange of witness and exhibit lists to which the government
has agreed, two weeks before trial.  Such an exchange avoids
gamesmanship, allows the parties to raise anticipated
objections or issues, and will help ensure an efficient trial.

### 5.   Severance motions

Defendants' position is that severance motions should be
filed on January 7, 2009, three months before trial.  The
government believes severance motions should be filed with the
other defense motions on October 20, 2008.  Defendants should

9

1   be fully prepared to file their severance motion(s) and make

2   any arguments in support of those motions by October 20, 2008.

3   Indeed, in many criminal cases, severance motions are the first

4   motions to be brought by defendants, often within weeks of

5   indictment.  Moreover, a decision on severance is fundamental

6   to trial preparation, strategy, witness and exhibit selection,

7   and other contingent matters.  In a complex case, such a

8   decision should not wait until a few months before the start of

9   trial.

### 6.   Bill of Particulars

11      Defendants have indicated that among the motions they

12  intend to file on October 20, 2008, are motions for a bill of

13  particulars.  As defendants are aware, they are well past the

14  deadline under the Federal Rules to file motions for a bill of

15  particulars in the regular course.  Fed. R. Crim. P. 7 ("The

16  defendant may move for a bill of particulars before or within

17  10 days after arraignment or at a later time if the court

18  permits.").  If defendants file such motion(s) and depending on

19  what arguments they raise, the government could be prejudiced

20  by their delay in not timely filing their motion.[4]

---

22      [4]  For example, if defendant were granted a motion for a
bill of particulars, one remedy the government has is to
23  supersede the indictment.  See e.g. Lewis v. United States, 2008
WL 2225848 at *2 (N.D. W.Va. 2008).  Given that defendant
24  Nicholas has raised statute of limitations defenses in the
parallel civil case, a delay in the motion for a bill of
25  particulars might prejudice the government.  The same holds true
for other motions seeking to alter or dismiss the indictment.  If
26  defendants wish to make these type of motions later than the
rules require, then they should also agree to toll any applicable
27  statutes of limitations so the government is not prejudiced by
their delay.
28

Accordingly, the government is not willing to waive such defense as a part of the scheduling order, nor does the government believe it is appropriate for defendants to attempt to convert a scheduling order into a vehicle to litigate hypothetical arguments in future motions.  This issue is premature and should not be decided as part of a scheduling order.  If defendants file a motion for a bill of particulars, the government may seek to have the motion denied on the basis that it is time barred, among other bases.[5]

### 7.    Rule 17(c) subpoenas and grand jury subpoenas

The parties agree that defendants shall seek rule 17(c) subpoenas, if any, on a subpoena by subpoena basis.  Without having seen any such subpoenas, the government does not yet know whether any such subpoenas would be appropriate or fall outside the narrowly permissible confines of Rule 17(c).[6]  Like the bill of particulars motion, this issue is premature and should not be decided as part of a scheduling order.  If defendants seek leave of the Court to issue Rule 17(c) subpoenas in this case, the government will respond at that time.

---

[5]  Similarly, defendant Nicholas indicated to the government after indictment of his intention to seek and order disqualifying counsel for the government.  The government informed defendant Nicholas that this scheduling order in no way relieves of him of his obligations to bring such a motion as soon as possible.

[6]  In this context, defendant has demanded disclosure of grand jury subpoenas from the investigation of this case.  The government has refused, noting that, among other things, Rule 17(c) subpoenas are expressly much more confined in scope and purpose than are grand jury subpoenas.

11

**III. CONCLUSION**

     For the reasons discussed above, the government respectfully requests that the Court enter the proposed Case Management Order submitted herewith.


Dated: August 1, 2008        Respectfully submitted,

                        THOMAS P. O'BRIEN
                        United States Attorney

                        ROBB C. ADKINS
                        Assistant United States Attorney
                        Chief, Santa Ana Office


                                /S/
                        ROBB C. ADKINS
                        ANDREW STOLPER
                        Assistant United States Attorneys