Brendan V. Sullivan, Jr. (*pro hac vice*)
bsullivan@wc.com
Gregory B. Craig (*pro hac vice*)
gcraig@wc.com
Barry S. Simon (*pro hac vice*)
bsimon@wc.com
Kevin M. Downey (*pro hac vice*)
kdowney@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:   (202) 434-5140
Facsimile:    (202) 434-5029

James D. Riddet (State Bar No. 39826)
JRiddet@stokkeriddet.com
STOKKE & RIDDET
3 MacArthur Place, Suite 750
Santa Ana, CA 92707-5903
Telephone:  (714) 662-2400
Facsimile:  (714) 662-2444

*Attorneys for Dr. Henry T. Nicholas, III*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| United States of America, | CASE NO.  SA CR 08-00139 CJC |
|---|---|
| Plaintiff, | NOTICE OF MOTION AND MOTION OF HENRY T. NICHOLAS, III FOR AN EVIDENTIARY HEARING REGARDING ASSISTANT U.S. ATTORNEY ANDREW STOLPER'S POTENTIAL CONFLICT OF INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATION OF BARRY S. SIMON |
| v. | |
| Dr. Henry T. Nicholas, III et al., | |
| Defendants. | |
| | Judge:    Hon. Cormac J. Carney |
| | Date:     September 15, 2008 |
| | Time:     11:00 a.m. |
| | Dept.:    Courtroom 9B |

1  TO THE HONORABLE CORMAC J. CARNEY, UNITED STATES
2  DISTRICT JUDGE AND TO THE PLAINTIFF, THE UNITED STATES OF
3  AMERICA AND ITS ATTORNEYS OF RECORD:
4
5  <u>NOTICE</u>
6  PLEASE TAKE NOTICE THAT on September 15, 2008 at 11:00 a.m., or as
7  soon thereafter as counsel may be heard, Defendant, Dr. Henry T. Nicholas, III
8  ("Dr. Nicholas") will bring on for hearing the following motion:
9
10  <u>MOTION</u>
11  Defendant, Dr. Nicholas, by and through his attorneys, hereby moves for an
12  evidentiary hearing regarding Assistant U.S. Attorney Andrew Stolper's potential
13  conflict of interest.  This motion is supported by the attached memorandum,
14  declaration of counsel, and exhibits; the files and records in this case; and any
15  evidence or argument presented at a hearing on this matter.  Counsel for Dr.
16  Nicholas have engaged in discussions with the government on this matter, but have
17  been unable to reach agreement with the government concerning Assistant U.S.
18  Attorney Stolper's potential conflict of interest.
19
20  DATED:  August 19, 2008
21  Respectfully submitted,
22  WILLIAMS & CONNOLLY LLP
   Brendan V. Sullivan, Jr.
23  Gregory B. Craig
   Barry S. Simon
24  Kevin M. Downey
25  STOKKE & RIDDET
   James D. Riddet
26
   BY: _____ /S/ _____
27  Barry S. Simon
28  *Attorneys for Dr. Henry T. Nicholas, III*

1

**TABLE OF CONTENTS**

2  I.   INTRODUCTION .................................................................................... 1

3  II.   BACKGROUND ..................................................................................... 4

4  III.   ARGUMENT .......................................................................................... 8

5      A.   An Evidentiary Hearing Is Warranted To Determine Whether
            Assistant U.S. Attorney Stolper Has Been Exposed to Relevant
6           Confidential Information ....................................................................... 8

7      B.   An Evidentiary Hearing Is Warranted In Light of Assistant U.S.
            Attorney Stolper's and His Wife's Relationship with Irell ................. 11

8  IV.   CONCLUSION ...................................................................................... 14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Berger v. United States*, 295 U.S. 78 (1935) ........................................................... 11

*Clearwater-Thompson v. Michael A. Grassmueck, Inc.*, 160 F.3d 1236 (9th Cir. 1998) ................................................................................................................. 2

*FTC v. Am. Nat'l. Cellular*, 868 F.2d 315 (9th Cir. 1989) ..................................... 11

*Gas-A-Tron v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976) ........................... 8, 11

*In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374 (S.D. Cal. 1996) ...... 9

*In re Grand Jury Subpoena (Rochon)*, 873 F.2d 170 (7th Cir. 1989) .................... 12

*Richardson v. Hamilton Int'l. Corp.*, 469 F.2d 1382 (3d Cir. 1972) ....................... 8

*United States ex rel. Securities and Exchange Commission v. Carter*, 907 F.2d 484 (5th Cir. 1990) .............................................................................................. 11

*United States v. Hernandez*, Nos. 3:03-cr-90-02, 3:04-cr-57-02, 2008 WL 1990752 (D.N.D. May 7, 2008) ...................................................................... 12

*United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980) .............................................. 8

*United States v. Kenney*, 911 F.2d 315 (9th Cir. 1990) ........................................... 11

*United States v. Ketner*, 370 F. Supp. 2d 1045 (C.D. Cal. 2005) ....................... 9, 10

*United States v. Sys. Planning Corp.*, No. CR-N-91-102-HDM, slip op. (D. Nev. Aug. 18, 1992) .................................................................... 11, 12, 13, 14

*United States v. Terry*, 806 F. Supp. 490 (S.D.N.Y. 1992) .................................... 12

*United States v. Vega*, 317 F. Supp. 2d 599 (D.V.I. 2004) ..................................... 12

*United States v. Walczak*, 783 F.2d 852 (9th Cir. 1986) .......................................... 8

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) .............. 11

**STATE CASES**

*Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 104 Cal. Rptr. 2d
    116 (2001) ................................................................................................ 1, 9

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 280
    Cal. Rptr. 614 (1991) ................................................................................. 9

*Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 3 Cal. Rptr. 3d 877
    (2003) ......................................................................................................... 9

**OTHER AUTHORITIES**

28 C.F.R. § 45.2 ................................................................................. 2, 12, 13

28 U.S.C. § 528 ...................................................................................... 2, 12

28 U.S.C. § 530B(a) ...................................................................................... 8

L.R. 83-3.1.2 ................................................................................................. 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

The indictment in this matter charges defendant Henry T. Nicholas, III with several federal offenses arising from purported improprieties in connection with the administration of the stock option program at Broadcom, Inc.  Although the face of the indictment does not make it apparent, several of the improper acts that Dr. Nicholas is alleged to have committed occurred in connection with legal advice that he and/or Broadcom received from the law firm of Irell & Manella ("Irell").

One of the prosecutors handling this case, Assistant U.S. Attorney Andrew Stolper, was a lawyer at Irell from 2000 to 2002, Exs. 1, 2,[1] a time period during which advice was rendered by Irell in connection with matters that are now the subject of indictment.  Assistant U.S. Attorney Stolper's wife also worked as a lawyer at Irell (from August 2000 to June 2007), *see* Simon Decl. ¶ 2, also at a time when advice was given and legal services provided by Irell to Broadcom and Dr. Nicholas in connection with matters that are now the subject of indictment.  On information and belief, both Assistant U.S. Attorney Stolper and his wife maintain close, personal relationships with Irell attorneys and with the firm.  *Id.*

These circumstances give rise to two concerns.  First, it is well settled that all lawyers, including prosecutors, are barred from participating in a case if they have relevant confidential information about an adverse party.  *See Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1340, 104 Cal. Rptr. 2d 116, 127 (2001). The Court must satisfy itself, through a reliable process, that Assistant U.S. Attorney Stolper has not had access to confidential information of Broadcom or Dr. Nicholas that is related to this case.  If Assistant U.S. Attorney Stolper has had access to such information, he must be disqualified.

---

[1] All references to exhibits (or "Ex.") refer to exhibits attached to the Declaration of Barry S. Simon in Support of Motion of Dr. Henry T. Nicholas, III for an Evidentiary Hearing Regarding AUSA Andrew Stolper's Potential Conflict of Interest.

1    Second, even if there has not been disclosure of relevant confidential

2  information to Assistant U.S. Attorney Stolper, "[i]t is fundamental that the

3  prosecutor of a criminal charge be disinterested." *Clearwater-Thompson v. Michael*

4  *A. Grassmueck, Inc.*, 160 F.3d 1236, 1237 (9th Cir. 1998).  To avoid conflicts of

5  interest or the appearance of such conflicts, a federal prosecutor may not participate

6  in a case if he has a personal relationship with a person or organization that is

7  substantially involved in conduct that is the subject of the prosecution, or that has a

8  substantial interest that would be directly affected by the outcome of the

9  prosecution.  *See* 28 U.S.C. § 528;[2] 28 C.F.R. § 45.2(a).[3]

10

11

12

_____

13  [2] 28 U.S.C. § 528 provides:

14      The Attorney General shall promulgate rules and regulations which require
        the disqualification of any officer or employee of the Department of Justice,
15      including a United States attorney or a member of such attorney's staff, from
        participation in a particular investigation or prosecution if such participation
16      may result in a personal, financial, or political conflict of interest, or the
        appearance thereof. Such rules and regulations may provide that a willful
17      violation of any provision thereof shall result in removal from office.

18  [3] 28 C.F.R. § 45.2(a) provides:

19      Unless authorized under paragraph (b) of this section, no employee
        shall participate in a criminal investigation or prosecution if
20      he has a personal or political relationship with:
           (1) Any person or organization substantially involved in the conduct
21      that is the subject of the investigation or prosecution; or
           (2) Any person or organization which he knows has a specific and
22      substantial interest that would be directly affected by the outcome of
        the investigation or prosecution.
23
    28 C.F.R. § 45.2(c) defines "[p]ersonal relationship" as
24
        a close and substantial connection of the type normally viewed as likely
25      to induce partiality.  An employee is presumed to have a personal
        relationship with his father, mother, brother, sister, child and spouse.
26      Whether relationships (including friendships) of an employee to other
        persons or organizations are "personal" must be judged on an
27      individual basis with due regard given to the subjective opinion of the
        employee.
28

1    Here, there is reason to believe that Assistant U.S. Attorney Stolper should be

2    disqualified from further participation in this case.  Both Assistant U.S. Attorney

3    Stolper and his wife have a personal relationship with Irell.  Irell was involved as

4    counsel in transactions at issue in this prosecution.  Both pending indictments

5    contain allegations about matters on which Irell attorneys worked during the time

6    that Assistant U.S. Attorney Stolper and his wife were employed there.  More

7    generally, Irell has represented both Dr. Nicholas and Broadcom in matters related

8    to the current charges against Dr. Nicholas.  In addition, on information and belief,

9    Assistant U.S. Attorney Stolper's wife performed legal work for Broadcom during

10   her tenure at Irell.  Simon Decl. ¶ 2.  Assistant U.S. Attorney Stolper's wife

11   continued to work at Irell after the government commenced an investigation into

12   Broadcom in 2006, and during Irell's review, on behalf of Broadcom, commencing

13   in May 2006 (*see* Ex. 8), of stock options grants directly related to the pending

14   options indictment.[4]

15   These facts raise serious conflict of interest concerns.  Shortly after the return

16   of the indictments, defense counsel raised these concerns by letter with Assistant

17   U.S. Attorney Stolper in an effort to determine the relevant facts.  *See* Ex. 11.

18   However, Assistant U.S. Attorney Stolper refused to provide information about his

19   employment at Irell or his access to confidential information related to the current

20   indictments.  *See* Ex. 12. Accordingly, Dr. Nicholas respectfully requests that the

21   Court hold an evidentiary hearing to determine (i) whether Assistant U.S. Attorney

22   Stolper has had access to material confidential information of Broadcom and/or Dr.

23   Nicholas and (ii) whether Assistant U.S. Attorney Stolper's and his wife's

24   association with Irell and any Irell attorneys who have provided legal services to

25

26   _____

[4] According to Assistant U.S. Attorney Stolper, on an unidentified date, "[t]he
27   USAO requested that Irell construct a formal ethical wall around [his] wife to ensure
     that she would not inadvertently come into contact with any Broadcom matter."  Ex.
28   12 at 3.  Assistant U.S. Attorney Stolper has not disclosed when that ethical wall
     was created or what measures were taken to effectuate it.

1  Broadcom and Dr. Nicholas give rise to a conflict of interest or the appearance

2  thereof, requiring disqualification of Assistant U.S. Attorney Stolper.

3  **II.   BACKGROUND.**

4

5      On June 4, 2008, the grand jury returned two indictments against Dr.

6  Nicholas.  The options indictment (SA CR 08-139) alleges that Dr. Nicholas'

7  participation in Broadcom's options grants to employees during the period  between

8  1999 and 2005 violated various federal laws.  The narcotics indictment (SA CR 08-

9  140) alleges that Dr. Nicholas violated various federal narcotics laws from 1999

10  through 2008.

11      Several of the charges in the options and narcotics indictments directly

12  involve matters in which Irell, the former employer of both Assistant U.S. Attorney

13  Stolper and his wife, rendered legal services.[5]  Irell's legal services took place while

14  AUSA Stolper and/or his wife worked at the firm.  They involved at least one Irell

15  attorney who worked in the same Irell office (Century City) as Assistant U.S.

16  Attorney Stolper.  Dr. Nicholas' prominence in the community makes it likely that

17  such representations were discussed within the firm, potentially providing Assistant

18  U.S. Attorney Stolper and his wife access to confidential information whether or not

19  they personally worked on any of these matters.

20      First, the options indictment characterizes a settlement with a former

21  Broadcom employee related to Broadcom's options practices as a "payoff" in

22  furtherance of the alleged conspiracy charged in count 1.  *See* Options Indictment

23  ¶¶ 64-68; Overt Act No. 29.  The government's request for detention prominently

24  featured this alleged "payoff" in the government's attempt to deny bail to Dr.

25  _____

26  [5] It should not be inferred from this motion that either Irell or its attorneys acted
improperly or illegally.  But to the extent that allegations in the indictments involve
alleged conduct by Dr. Nicholas, Irell attorneys also played a role in those matters.

27  Assistant U.S. Attorney Stolper's association with Irell and individual Irell attorneys
who may have provided legal services to Broadcom and Dr. Nicholas calls into

28  question his impartiality.

1    Nicholas.  *See* Government's Request for Detention, Dkt. No. 1, at 7-8, 15.[6]  Irell

2    was counsel in the settlement that the government characterizes as a "payoff."  An

3    Irell attorney (and perhaps others) provided legal services in connection with that

4    settlement, and prepared and signed the settlement agreement at the center of these

5    allegations.  Simon Decl. ¶ 3.[7]  All of this took place in 2001, a time when Assistant

6    U.S. Attorney Stolper and his wife both worked at Irell.

7         Second, the narcotics indictment characterizes a settlement with a different

8    Broadcom employee as an "attempt to conceal [Dr. Nicholas'] unlawful conduct"

9    relating to narcotics.  *See* Narcotics Indictment Count 1 ¶ 4(g) & Overt Act Nos. 55-

10   56.  The government relied on this settlement agreement to urge the denial of bail to

11   Dr. Nicholas.  *See* Government's Request for Detention, Dkt. No. 1, at 8, 15.[8]  As

12   with the options-related settlement, the same Irell attorney (and perhaps other Irell

13   attorneys) provided legal services in connection with this settlement, Simon Decl.

14   ¶ 3, which was executed in June 2002. Assistant U.S. Attorney Stolper may have

15   worked at Irell during at least part of this representation, and his wife worked at Irell

16   at the time of the settlement agreement.

17        Third, the options indictment alleges that options grants to Section 16 officers

18   were fraudulently executed in 2002.  *See* Options Indictment ¶¶ 99, 117-23.  One of

19   the two directors on Broadcom's compensation committee, which was responsible

20   for those grants, was Werner Wolfen, a senior partner *emeritus* at Irell at the time.

21   *See* Ex. 3 (July 2002 e-mail from N. Tullos to L. Ross and W. Wolfen); Ex. 4

22   _____

23   [6] The government asserted in the request for detention that Dr. Nicholas "caused
     Broadcom to settle the complaint by offering over $7 million of shareholder value to
     M.N.  A condition of the payment was that M.N. was required to keep his

24   allegations secret."  *Id.* at 8 (citations omitted).

25   [7] On information and belief, this attorney worked in the same office of Irell as
     Assistant U.S. Attorney Stolper.  Simon Decl. ¶ 3. In addition, on information and
     belief, other Irell attorneys who performed legal services for Broadcom and/or Dr.

26   Nicholas worked in the same office of Irell as Assistant U.S. Attorney Stolper.  *Id.*

27   [8] The government asserts that "defendant caused Broadcom to pay this former
     administrative assistant $1 million of the shareholder[s'] money in exchange for her

28   silence."  *Id.* at 8.

1   (Martindale-Hubbell Profile of Werner Wolfen).  Mr. Wolfen was a senior partner

2   *emeritus* at Irell during both Assistant U.S. Attorney Stolper's and his wife's tenure

3   at the firm.

4       Fourth, Broadcom's general counsel at the time of the alleged misconduct

5   was David Dull.  *See* SA CV 08-539, Dkt. No. 1 (SEC Complaint) ¶ 2.  Before

6   joining Broadcom, Dull was a partner at Irell.  *See* Ex. 5 (Dull Biography).  The

7   Securities and Exchange Commission named Dull as a co-defendant in its parallel

8   civil suit, and alleges that "Dull knew about and participated in the fraud," SA CV

9   08-539, Dkt. No. 1 ¶ 3.[9]

10      Fifth, Irell has represented both Broadcom and Dr. Nicholas for many years.

11  On information and belief, Irell represented both Broadcom and Dr. Nicholas at the

12  time that Assistant U.S. Attorney Stolper and his wife were employed there.

13  Moreover, Irell has represented both Broadcom and Dr. Nicholas in a wide range of

14  matters which closely relate to the subject matter of the indictments.  For example:

15  • Broadcom retained Irell in or about May 2006 to conduct an "equity award

16      review" of the options-granting practices that are the basis of the options

17      indictment.  *See* Ex. 8 (excerpt of Broadcom 2005 Form 10-K/A identifying

18      Irell as outside counsel).

19  • Irell represents Broadcom in an SEC action relating to the same underlying

20      facts as the options indictment against Dr. Nicholas.  *See* Ex. 6 (SEC Proof of

21      Service to Irell) at 3.

22  • Irell continues to represent Broadcom in a shareholder derivative lawsuit

23      relating to alleged facts underlying the options indictment.  *See* Ex. 7 (Docket

24      Sheet in derivative action) at 13.  Irell previously represented Dr. Nicholas in

25      the same derivative litigation.  Ex. 7 at 11-13.

26

27

28

[9] It should not be inferred from this statement that Mr. Dull engaged in any improper or unlawful conduct.  Dr. Nicholas disputes the allegations in the SEC complaint.

1   • Irell represented Dr. Nicholas in connection with a complaint brought by

2       contractor Roman James relating to matters alleged in the narcotics

3       indictment.  *See* Ex. 9 at Attachment 8(c) (identifying Irell as counsel for Dr.

4       Nicholas).

5   • Irell represented Dr. Nicholas and Broadcom in a number of securities class

6       action lawsuits that alleged that the company inappropriately accounted for its

7       issuance of the rights to purchase stock (options and warrants).  *See* Ex. 10

8       (Docket Report identifying Irell as counsel for Dr. Nicholas and Broadcom).

9   • On information and belief, Irell represented Broadcom in the criminal

10      investigation of the conduct underlying the options indictment.  Simon Decl.

11      ¶ 4.[10]

12      In light of Irell's substantial connections to this case—including rendering

13  legal services in matters that are directly at issue in the charges—defense counsel

14  requested that Assistant U.S. Attorney Stolper provide information concerning his

15  and his wife's involvement with matters related to Broadcom and Dr. Nicholas

16  while employed at Irell.  Ex. 11 (June 27, 2008 Letter from B. Simon to A. Stolper).

17  Assistant U.S. Attorney Stolper denied that he or his wife worked on any matters for

18  Dr. Nicholas personally.  Ex. 12 (July 7, 2008 Letter from A. Stolper to B. Simon).

19  He refused, however, to provide any information regarding Broadcom,

20  notwithstanding the fact that the options indictment pertains to Dr. Nicholas' alleged

21  activities as a Broadcom officer, and that several of the matters in which Irell

22  represented Broadcom directly relate to the subject matter of the indictments.  *See*

23  *id.*  He also refused to provide any information concerning his or his wife's personal

24  or professional relationships with Irell attorneys who worked on Broadcom or

25  Nicholas matters.  *Id.* at 3.

26

27  ────────────────

28  [10] On information and belief, a number of these representations took place during
    Assistant U.S. Attorney Stolper's wife's tenure at the firm.

## III.   ARGUMENT.

"Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised.  It is the duty of the district court to examine the charge . . . ."  *Gas-A-Tron v. Union Oil Co.*, 534 F.2d 1322, 1324-25 (9th Cir. 1976) (per curiam) (quoting *Richardson v. Hamilton Int'l. Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972).

Generally, "[w]hether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court."  *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (per curiam).  But such a hearing is "required" when a defendant raises "a material issue of fact" which, "if resolved in accordance with [the defendant's] contentions would entitle him to relief."  *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (quotation marks omitted).  Here, Assistant U.S. Attorney Stolper's and his wife's close association with Irell, their potential access to confidential information relating to this case, and their employment at Irell during the time of alleged acts charged in the indictments that directly involve legal services performed by Irell, raise serious conflict of interest concerns.  Coupled with this Court's duty "to supervise the conduct of the members of its bar," *Gas-A-Tron*, 534 F.2d at 1324 (quotation marks omitted), these known facts demonstrate that an evidentiary hearing is necessary to ensure that the case is prosecuted by a disinterested prosecutor.

A.   <u>An Evidentiary Hearing Is Warranted To Determine Whether Assistant U.S. Attorney Stolper Has Been Exposed to Relevant Confidential Information.</u>

As a federal prosecutor, Assistant U.S. Attorney Stolper is subject to California's ethical rules.  *See* 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's

1   duties, to the same extent and in the same manner as other attorneys in that State.”);

2   *In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374, 1377 (S.D. Cal.

3   1996); L.R. 83-3.1.2 (adopting “the State Bar Act, the Rules of Professional

4   Conduct of the State Bar of California, and the decision[] of any court applicable

5   thereto” as this Court’s “standard[] of professional conduct”).

6          California ethical rules bar an attorney from participating in a matter if there

7   is a “reasonable probability” that he or she “had access to confidential information

8   while at his or her former firm that is related to the current representation.”  *Adams*,

9   86 Cal. App. 4th at 1340; *see also United States v. Ketner*, 370 F. Supp. 2d 1045,

10  1047 (C.D. Cal. 2005); *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698,

11  711-13, 3 Cal. Rptr. 3d 877, 886-88 (2003).  Even when the attorney did not

12  personally take part in the prior related representation, the Court must “determine

13  whether confidential information material to the current representation would

14  normally have been imparted to the attorney during his tenure at the old firm.”

15  *Adams*, 86 Cal. App. 4th at 1340 (quoting *H.F. Ahmanson & Co. v. Salomon Bros.,*

16  *Inc.*, 229 Cal. App. 3d 1445, 1455, 280 Cal. Rptr. 614 (1991)).

17         “[I]n light of the paramount importance of maintaining the inviolability of

18  client confidences, where a substantial relationship between the former firm’s

19  representation of the client and the current lawsuit has been shown . . . the attorney

20  whose disqualification is sought should carry the burden of proving that he had no

21  exposure to confidential information relevant to the current action while he was a

22  member of the former firm.”  *Adams*, 86 Cal. App. 4th at 1340-41.  “That burden

23  requires an affirmative showing and is not satisfied by a cursory denial.”  *Id.* at

24  1341.

25         At this time, neither defense counsel nor the Court can have any assurance

26  that Assistant U.S. Attorney Stolper did not have access to confidential information.

27  Assistant U.S. Attorney Stolper has refused to respond to defense counsel’s requests

28  concerning his and his wife’s access to relevant confidential information during

1   their respective tenures at Irell.  Assistant U.S. Attorney Stolper has not carried his

2   burden of demonstrating that "he had no exposure to confidential information

3   relevant to the current action," *id.*, based on either his or his wife's work at Irell.

4       In *United States v. Ketner*, 370 F. Supp. 2d 1045 (C.D. Cal. 2005), this Court

5   (Hon. James V. Selna) considered specific and detailed evidence about Assistant

6   U.S. Attorney Stolper's work at Irell before determining that his prior employment

7   there did not require his disqualification in a particular case.  *Id.* at 1046.  Ketner

8   previously had been represented in a bankruptcy matter by Irell.  *Id.*  In declining to

9   disqualify Assistant U.S. Attorney Stolper, the Court stressed, *inter alia*, that "it is

10  clear that Stolper never had any access to confidential information" about the

11  defendant, *id*. at 1048;  "Stolper was virtually unknown to the Irell lawyers who

12  worked on Ketner's bankruptcy," *id*. at 1047; and "[t]he records for the engagement

13  were maintained in Newport Beach, not Century City where Stolper worked," *id.* at

14  1048.[11]  Before reaching its conclusion, however, the Court considered declarations

15  from both Assistant U.S. Attorney Stolper and each person at Irell who spent more

16  than 50 hours on Ketner's representation.  *Id.* at 1047-48.  Only after those

17  declarations conclusively established that Assistant U.S. Attorney Stolper had no

18  access to any information related to the prior related litigation did the Court decline

19  to disqualify him.  *Id.*

20      Here, there has been no such showing.  Indeed, Assistant U.S. Attorney

21  Stolper has refused to provide details about his and his wife's access to Broadcom-

22  related information at Irell.  Moreover, Assistant U.S. Attorney Stolper's wife

23  worked at Irell for seven years, and, on information and belief, did legal work for

24  Broadcom herself during her tenure at Irell.  In addition, Assistant U.S. Attorney

25  Stolper's wife was an Irell attorney in 2006, a year in which Irell was engaged in an

26  _____

27  [11] Unlike here (*see infra* p.12), the defendant in *Ketner* "cite[ed] no cases standing for the proposition that appearances alone compel disqualification of a prosecutor." *Id.* at 1049 n.15.  Nor, apparently, did the defendant cite either 28 U.S.C. § 528 or

28  28 C.F.R. § 45.2.

investigation of Broadcom's options practices.  At a minimum, further inquiry is warranted on this subject.

> B.    <u>An Evidentiary Hearing Is Warranted In Light of Assistant U.S. Attorney Stolper's And His Wife's Relationship with Irell and Irell Attorneys Who Provided Legal Services to Broadcom and Dr. Nicholas.</u>

"The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.  This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the *appearance of impropriety*."  *Gas-A-Tron*, 534 F.2d at 1324-25 (emphasis added) (quotation marks omitted); *see also United States v. Kenney*, 911 F.2d 315, 321 (9th Cir. 1990) (noting that "the potential for a conflict of interest [is] sufficient" to disqualify counsel even where no actual conflict of interest exists).

This duty is no different with respect to federal prosecutors: "[a]voiding even an appearance of partiality is particularly important for a Government prosecutor." *United States v. Sys. Planning Corp.*, No. CR-N-91-102-HDM, slip op. at 6 (D. Nev. Aug. 18, 1992) (attached hereto as Ex. 13); *FTC v. Am. Nat'l. Cellular*, 868 F.2d 315, 319 (9th Cir. 1989) ("[W]e recognize that under certain circumstances a government attorney may lack the impartiality and *appearance of impartiality* that our system of justice demands of its prosecutors." (emphasis added)); *accord United States ex rel. Securities and Exchange Commission v. Carter*, 907 F.2d 484, 488 (5th Cir. 1990).  A prosecutor is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

To that end, Congress has mandated that the Attorney General promulgate regulations which "*require* the disqualification" of a United States Attorney "from

1  participation in a particular investigation or prosecution if such participation may

2  result in a personal, financial, or political conflict of interest, *or the appearance*

3  *thereof*."  28 U.S.C. § 528 (emphases added).  Pursuant to this statute, the

4  Department of Justice mandates that "no employee shall participate in a criminal

5  investigation or prosecution if he has a personal or political relationship with . . .

6  [a]ny person or organization substantially involved in the conduct that is the subject

7  of the investigation or prosecution."  28 C.F.R. § 45.2(a).[12]

8          Courts have looked to the rule set out in 28 U.S.C. § 528 and 28 C.F.R.

9  § 45.2(a) when exercising their supervisory authority over federal criminal

10  prosecutions.  *See, e.g., Sys. Planning Corp.*, No. CR-N-91-102-HDM, slip op. at 5

11  (disqualifying prosecutor for lacking the appearance of impartiality, as required by

12  28 U.S.C. § 528 and 28 C.F.R. § 45.2(a)); *In re Grand Jury Subpoena (Rochon)*,

13  873 F.2d 170, 175 (7th Cir. 1989) (citing 28 U.S.C. § 528 regarding standard for the

14  disqualification of a prosecutor for a conflict of interest); *United States v. Terry*, 806

15  F. Supp. 490, 493 & n.2, 495 (S.D.N.Y. 1992) (citing 28 U.S.C. § 528; observing

16  that "disqualification is *required* when there is even *the appearance of a conflict*"

17  (emphases added)); *United States v. Vega*, 317 F. Supp. 2d 599, 603-04 (D.V.I.

18  2004) (considering 28 U.S.C. § 528 and 28 C.F.R. § 45.2(a) in connection with

19  motion for disqualification of prosecutor); *United States v. Hernandez*, Nos. 3:03-cr-

20  90-02, 3:04-cr-57-02, 3:06-cv-15, 2008 WL 1990752, at *2 (D.N.D. May 7, 2008)

21  ("A prosecutor is required to refrain from participating in an investigation or

22  prosecution 'if such participation may result in a personal, financial, or political

23

---

[12] Although 28 C.F.R. § 45.2(d) asserts that the section pertains to agency

24  management and is not intended to create rights enforceable by other individuals,
this self-serving provision can at most refer to the *procedural* components embodied

25  in Section 45.2(c).  The substantive guarantee expressed in Section 45.2(a) is based
on Congress's mandate in 28 U.S.C. § 528.  In addition, nothing in Section 45.2(d)

26  prevents this Court from looking to the statements of Congress and the Department
of Justice, as embodied in 28 U.S.C. § 528 and 28 C.F.R. § 45.2(a), in exercising its

27  supervisory authority over federal criminal prosecutions.  *See United States v. Sys.
Planning Corp.*, No. CR-N-91-102-HDM, slip op. (Ex. 13) at 5 (D. Nev. Aug. 18,

28  1992).

1  conflict of interest, or the appearance thereof.'" (quoting 28 U.S.C. § 528)).

2          Here, Assistant U.S. Attorney Stolper's association with Irell calls into

3  question not only the requirement that he not have access to relevant confidential

4  information about an adverse party, but also his appearance of impartiality.

5  Assistant U.S. Attorney Stolper and his wife have a personal relationship with an

6  "organization substantially involved in the conduct that is the subject of the . . .

7  prosecution," contrary to 28 C.F.R. § 45.2(a).  Both Assistant U.S. Attorney Stolper

8  and his wife worked at a law firm that represented Dr. Nicholas and Broadcom in

9  various matters over the years, including several that directly relate to the subject

10  matter of the indictments.  Their former colleagues participated in matters at issue in

11  the indictments during the time that Assistant U.S. Attorney Stolper and/or his wife

12  were employed at the firm.  At a minimum, the appearance of partiality created by

13  Assistant U.S. Attorney Stolper's and his wife's association with Irell merits further

14  investigation.

15          A similar relationship to an entity whose conduct was at issue in an

16  indictment was grounds for disqualification in *United States v. Sys. Planning Corp*.

17  There, the indictment concerned a fuel spill at Fallon Naval Air Station ("NAS

18  Fallon").  No. CR-N-91-102-HDM (D. Nev. 1992), slip op. (Ex. 13) at 2.  NAS

19  Fallon was not named as a defendant; nor were any officers or employees of the

20  Navy.  The Assistant U.S. Attorney assigned to the case had served as a JAG officer

21  in the Navy and Naval Reserve for approximately 10 years, including 39 days at

22  NAS Fallon during the investigation of the spill.  *Id*. at 2-3.  The court held that the

23  Assistant U.S. Attorney's association with the Navy and NAS Fallon "g[ave] rise to

24  an appearance of conflict of interest likely to affect the public perception of the

25  prosecution."  *Id*. at 9.  In so holding, it stressed that (1) "[t]he Navy and NAS

26  Fallon personnel are closely linked to the alleged wrongdoing in th[e] case," (2) "the

27  conduct of the Navy and its personnel at NAS Fallon will be directly at issue in the

28

1  prosecution of the defendants," and (3) the Assistant U.S. Attorney had "strong and

2  recent ties to the Navy and NAS Fallon." *Id.* at 7-9.

3        Here, the known facts suggest that (1) Irell  provided legal services in matters

4  charged in two indictments, (2) matters on which Irell provided legal services are

5  directly at issue in Dr. Nicholas' prosecution, and (3) Assistant U.S. Attorney

6  Stolper and his wife have strong and recent ties to Irell.  Further investigation is

7  critical.  Accordingly, an evidentiary hearing concerning Assistant U.S. Attorney

8  Stolper's and his wife's relationship with both Irell and Irell attorneys who worked

9  on Broadcom or Nicholas matters is necessary to ensure the "appearance of

10  impartiality that our system of justice demands of its prosecutors," *American Natl.*

11  *Cellular*, 868 F.2d at 319.[13]

12

13  **IV.   CONCLUSION.**

14        For the foregoing reasons, Dr. Nicholas respectfully requests that this Court

15  (1) hold an evidentiary hearing to further explore Assistant U.S. Attorney Stolper

16  and his wife's personal association with Irell and access to confidential information

17  as it relates to the subject matter of the indictment, and/or (2) grant any other relief it

18  deems appropriate.

19

20  DATED:  August 19, 2008

21

22  [13] Dr. Nicholas requests a hearing concerning the matters raised in defense counsel's June 27, 2008 letter to Assistant U.S. Attorney Stolper (Ex. 11) namely:  (1) any Broadcom or Nicholas matter on which Assistant U.S. Attorney Stolper or his wife

23  worked at Irell; (2) any information regarding Broadcom or Dr. Nicholas that Assistant U.S. Attorney Stolper obtained during his tenure at Irell or from his wife;

24  (3) any Irell attorneys or staff members who worked on Broadcom or Nicholas matters with whom Assistant U.S. Attorney Stolper and/or his wife have a

25  professional or personal relationship; (4) information about the ethical wall created at Irell with respect to Assistant U.S. Attorney Stolper's wife; (5) any compensation

26  or other benefits that Assistant U.S. Attorney Stolper or his wife received from Irell as a result of any Broadcom or Nicholas matter; and (6) any restrictions placed on

27  Assistant U.S. Attorney Stolper during the investigation or prosecution of this matter.  At a minimum, this Court should initially require declarations from

28  Assistant U.S. Attorney Stolper and his wife and all relevant Irell personnel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr.
Gregory B. Craig
Barry S. Simon
Kevin M. Downey

STOKKE & RIDDET
James D. Riddet

BY: _____/S/_____
                    Barry S. Simon

*Attorneys for Dr. Henry T. Nicholas, III*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2008, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the

following:

> Robb C. Adkins
> Andrew Stolper
> Kenneth B. Julian
> United States Attorney's Office
> 411 West Fourth Street, 8th Floor
> Santa Ana, California  92701
> *Assistant United States Attorneys*


> _____/S/_____
> Negar Tekeei