RICHARD MARMARO (Bar No. 91387)
rmarmaro@skadden.com
JACK P. DICANIO (Bar No. 138782)
jdicanio@skadden.com
MATTHEW E. SLOAN (Bar No. 165165)
masloan@skadden.com
MATTHEW D. UMHOFER (Bar No. 206607)
mumhofer@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Tel: (213) 687-5000
Fax: (213) 687-5600

Attorneys for Defendant William J. Ruehle

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>HENRY T. NICHOLAS III AND WILLIAM J. RUEHLE,<br><br>   Defendants. | CASE NO. SACR 08-139-CJC<br><br>**WILLIAM J. RUEHLE'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT ONE OF THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES;**<br><br>**Filed Under Separate Cover**<br>**DECLARATION OF RICHARD MARMARO; and**<br><br>**[PROPOSED] ORDER.**<br><br>Judge: The Honorable Cormac J. Carney<br><br>Hearing Date: December 8, 2008<br>Hearing Time: 9:00 a.m. |

**WILLIAM J. RUEHLE'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT; No. SACR 08-139-CJC**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 8, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Cormac J. Carney, located at 411 West Fourth Street, Santa Ana, California, Defendant William J. Ruehle will, and hereby does, move pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure to dismiss the Indictment in the above-captioned matter.

Defendant William J. Ruehle, by and through his counsel, hereby submits his Motion To Dismiss Count One of the Indictment under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. This motion is based on the attached memorandum of points and authorities, the files and records in this case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

DATED: October 20, 2008

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Richard Marmaro
    Jack P. DiCanio
    Matthew E. Sloan
    Matthew D. Umhofer

By:    /s/ Richard Marmaro
      RICHARD MARMARO
      Attorneys for Defendant
      William J. Ruehle

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I. INTRODUCTION ........................................................................................ 1

II. FACTS .......................................................................................................... 2

III. ARGUMENT ................................................................................................ 3

    A. What a Criminal Indictment Must Allege ......................................... 3

    B. What a Conspiracy Count Must Allege ............................................. 4

    C. How This Indictment Falls Short ....................................................... 4

    D. Why Dismissal Is Necessary .............................................................. 7

IV. CONCLUSION ............................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Belt v. United States,
    868 F.2d 1208 (11th Cir. 1989) ............................................................................ 9

Bryan v. United States,
    524 U.S. 184, 18 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) ..................................... 4

Direct Sales Co. v. United States,
    319 U.S. 703, 63 S. Ct. 1265, 87 L. Ed. 1674 (1943) ......................................... 5

Dunbar v. United States,
    156 U.S. 185, 15 S. Ct. 325, 39 L. Ed. 390 (1895) ............................................. 5

United States v. Bernhardt,
    840 F.2d 1441 (9th Cir. 1988) .............................................................................. 4

United States v. Boren,
    278 F.3d 911 (9th Cir. 2002) ................................................................................ 4

United States v. Cecil,
    608 F.2d 1294 (9th Cir. 1979) ......................................................................... 7, 9

United States v. Cuevas,
    No. 07-50230, 2008 U.S. App. LEXIS 15337 (9th Cir. July 17, 2008) ........... 7, 8

United States v. Du Bo,
    186 F.3d (9th Cir. 1999) .................................................................................. 7, 8

United States v. Fitzgerald,
    882 F.2d 397 (9th Cir. 1989) ................................................................................ 3

United States v. Jackson,
    72 F.3d 1370 (9th Cir. 1995) ................................................................................ 3

United States v. James,
    980 F.2d 1314 (9th Cir. 1992) .............................................................................. 8

United States v. Krasovich,
    819 F.2d 253 (9th Cir. 1987) ............................................................................ 4, 5

United States v. Kurka,
    818 F.2d 1427 (9th Cir. 1987) .............................................................................. 8

United States v. Martin,
    411 F. Supp. 2d 370 (S.D.N.Y. 2006) ................................................................. 4

United States v. Melchor-Lopez,
    627 F.2d 886 (9th Cir. 1980) .......................................................................... 4, 5

United States v. Omer,
    395 F.3d 1087 (9th Cir. 2005) ............................................................................ 3

United States v. Rohrer,
    708 F.2d 429 (9th Cir. 1983) .............................................................................. 7

United States v. Rosi,
    27 F.3d 409 (9th Cir. 1994) ................................................................................ 4

**Statutes**

Fed. R. Crim. P. 7(c)(1) ............................................................................................ 3

Fed. R. Crim. P. 12(b)(3)(B) .................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite devoting the first 54 pages of its indictment to a conspiracy count, the prosecution has failed to state a claim for relief. In a conspiracy charge that rests entirely on so-called "rules" relating to the expensing of stock options, the prosecution has failed to identify a single such "rule" that was broken and makes no attempt to allege that the individuals charged in the indictment – or any other person – had knowledge of the unspecified "rules" or knowingly misapplied them.

At the center of the prosecution's case is a claim repeated 15 times throughout the indictment – that "[d]espite rules requiring the recognition and reporting of compensation expenses, [Dr. Henry T. Nicholas III and William J. Ruehle], and others caused Broadcom not to recognize or report compensation expenses." (Indictment ¶¶ 32, 36, 40, 44, 49, 60, 61, 63, 94, 100, 108, 109, 115, 123, 124). This is the crux of the prosecution's case. The prosecution's theory is that Mr. Ruehle and Dr. Nicholas committed fraud by violating certain "rules" – apparently referring to certain accounting opinions. Yet the prosecution fails to identify any of the purported "rules" it says were violated and fails to allege that these "rules" – whatever they were – were violated knowingly or intentionally.

The law requires more. A conspiracy charge rooted in fraud cannot stand unless it alleges facts and circumstances supporting the essential elements of the offense, which include knowledge of the objective of the conspiracy, knowledge of the fraudulent nature of the conspiracy, and intent to carry out a fraudulent scheme. The conspiracy theory in this case places certain' "rules" at the heart of the conspiracy's alleged fraudulent objective. The prosecution's failure to identify those "rules" or to allege a knowing violation of them, cuts the heart out of the conspiracy charge, and requires its dismissal.

//
//
//

## II. FACTS

Count one of the indictment alleges that Mr. Ruehle, Dr. Nicholas, Dr. Henry Samueli[1] and others conspired to commit crimes in the administration of Broadcom's employee stock options program. The indictment identifies the following crimes as objects of the conspiracy:

- Securities fraud, in violation of 15 U.S.C. § 78j(b) and 78ff; and 17 C.F.R. § 240.10b-5;

- False reports to the Securities and Exchange Commission in violation of 15 U.S.C. §§ 78m(a)(2), 78n, and 78ff; 17 C.F.R.§§ 240.12b-20, 240.13a-1, 240.13a-13, and 240.14a-9;

- Accounting fraud, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff; and 17 C.F.R. § 240.13b2-1;

- Lying to Broadcom's auditors, in violation of 15 U.S.C. §§ 78m(b)(2)(B), and 78ff; and 17 C.F.R. § 240.13b2-2; and

- Honest services wire fraud and mail fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1346, and 2.

(Indictment ¶ 18). According to the indictment, the "fraudulent scheme and conspiracy" consisted of efforts to "disguise, conceal, understate, and mischaracterize compensation expenses Broadcom was required to recognize in connection with its stock options." (Id. ¶ 15). The indictment's only description of what "required" Broadcom to recognize compensation expenses is the following phrase, repeated throughout the indictment: "rules requiring the recognition and reporting of compensation expenses." (Indictment ¶¶ 32, 36, 40, 44, 49, 60, 61, 63, 94, 100, 108, 109, 115, 123, 124). Despite the apparently centrality of these "rules," however, the indictment never identifies a single one of them.

//

---

[1] Dr. Samueli, who is an unindicted co-conspirator, is referred to throughout the indictment by his initials "H.S."

**WILLIAM J. RUEHLE'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT; No. SACR 08-139-CJC**
2

In its factual recitation, the conspiracy count makes selective use of the word "knowingly" – a crucial element of any conspiracy count and fraud charge. In describing the facts and circumstances of the alleged conspiracy, the prosecution uses the word "knowingly" only twice, both times when alleging that corporate records were created reflecting inaccurate meeting dates for Broadcom's option and compensation committees (Indictment ¶¶ 24-25). However, on the issue at the center of the alleged conspiracy – the so-called "rules" that allegedly "required" Broadcom to recognize compensation expenses – the prosecution utterly fails to allege that the "rules" were violated knowingly or intentionally.

## III. ARGUMENT

### A. What a Criminal Indictment Must Allege

While an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged," it must do more than that. Fed. R. Crim. P. 7(c)(1). It must also "must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the elements of the specific offense." United States v. Fitzgerald, 882 F.2d 397, 399 (9th Cir. 1989) (citations and internal quotation marks omitted).

Merely parroting the statutory language is often not enough, as "[i]mplied, necessary elements, not present in the statutory language, must be included in an indictment." United States v. Jackson, 72 F.3d 1370, 1380 (9th Cir. 1995). "'[I]f properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment.'" United States v. Omer, 395 F.3d 1087, 1088 (9th Cir. 2005) (citation omitted).[2]

---

[2] An indictment will not withstand a motion to dismiss unless it contains the elements of the charged offenses in sufficient detail (1) to enable the defendant to prepare his or her defense; (2) to ensure the defendant that he or she is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable the defendant to plead double

*(cont'd)*

As the Ninth Circuit has put it, "The indictment either states an offense or it doesn't." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). For the following reasons, this indictment doesn't, and should therefore be dismissed. Fed. R. Crim. P. 12(b)(3)(B) .

### B. What a Conspiracy Count Must Allege

An essential element of any conspiracy charge is "knowledge of the illegal objective." United States v. Krasovich, 819 F.2d 253, 255 (9th Cir. 1987) ("Knowledge of the objective of the conspiracy is an essential element of any conspiracy conviction."). The requisite knowledge consists of the "knowledge of the facts that constitute the offense." Bryan v. United States, 524 U.S. 184, 193, 118 S. Ct. 1939, 1946, 141 L. Ed. 2d 197 (1998).

Even knowledge of the objective alone is not enough; there must also be an "intention and agreement to accomplish a specific illegal objective." United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir. 1980). Thus, where the charge is conspiracy to commit fraud, the indictment must allege that an individual "knowingly engaged in the conspiracy with the specific intent to commit fraud" and make false statements, and must set forth the facts and circumstances supporting that allegation. United States v. Martin, 411 F. Supp. 2d 370, 371 (S.D.N.Y. 2006) (internal quotations and citation omitted).

### C. How This Indictment Falls Short

The fatal flaws in this indictment's conspiracy count now become clear. The conspiracy count describes a fraudulent scheme that turns on the knowing violation of purported "rules," but utterly fails to identify any of those "rules." The essential element of the fraudulent scheme is the knowing and intentional violation of certain "rules," but the conspiracy count lacks a single allegation that the unspecified "rules" were known and

---

(cont'd from previous page)
jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge. United States v. Rosi, 27 F.3d 409, 414 (9th Cir. 1994); United States v. Bernhardt, 840 F.2d 1441, 1445 (9th Cir. 1988).

1  understood by the Mr. Ruehle and Dr. Nicholas, or that they knowingly or intentionally
2  violated them.

3        Mr. Ruehle and Dr. Nicholas cannot be found guilty of – and cannot be charged
4  with – conspiracy unless it is pled and proved that they knew of the illegal objective and
5  the facts that constitute the alleged fraud.  <u>Krasovich</u>, 819 F.2d at 254-55.  The prosecution
6  asserts that the objective of the alleged fraud was to avoid properly accounting for stock
7  option expenses.  That alleged objective cannot be accomplished without a knowledge and
8  understanding of the accounting opinions that governed expensing for stock options, and
9  the knowing violation of those opinions.  It is on that crucial point that the indictment is
10 silent – the opinions at issue are nowhere identified, and their knowing violation is
11 nowhere alleged.

12       The government's failure to allege knowing violations of the relevant accounting
13 opinions necessarily leads to another pleading failure – the failure to sufficiently allege
14 intent.  Without knowledge and understanding of the accounting opinions, there can be no
15 intent to skirt them, and without a knowing violation, there can be no intentional violation
16 of them.  <u>Direct Sales Co. v. United States</u>, 319 U.S. 703, 711, 63 S. Ct. 1265, 1269, 87 L.
17 Ed. 1674 (1943) ("Without the knowledge, the intent cannot exist.  Furthermore, to
18 establish the intent, the evidence of knowledge must be clear, not equivocal.  This, because
19 charges of conspiracy are not to be made out by piling inference upon inference, thus
20 fashioning . . . a dragnet to draw in all substantive crimes."); <u>Dunbar v. United States</u>, 156
21 U.S. 185, 194, 15 S. Ct. 325, 328-29, 39 L. Ed. 390 (1895) ("An intent to defraud the
22 revenues implies an intent to deprive such revenues of something that is lawfully due
23 them, and there can be no such intent without knowledge of the fact that there is something
24 due.").  The prosecution has therefore failed to allege the facts and circumstances
25 necessary to establish two essential elements of the conspiracy charge – knowledge <u>and</u>
26 intent.  <u>Melchor-Lopez</u>, 627 F.2d at 891 ("simple knowledge, approval of, or acquiescence
27 in the object or purpose of a conspiracy, without an intention and agreement to accomplish
28 a specific illegal objective, is not sufficient").

The prosecution's failure to include allegations specifying the "rules" it claims were violated, and Mr. Ruehle's knowledge of those "rules," is curious.  At the time it drafted and presented the indictment, the prosecution certainly had in mind the so-called "rules" it believes Mr. Ruehle violated, and clearly was capable of including allegations of knowing conduct in its description of the facts and circumstances of the case.  Indeed, the civil complaint filed by the Securities and Exchange Commission ("SEC") – United States Attorney's Office's partner in this investigation – specifically identifies the accounting opinions it believes were violated at Broadcom with respect to stock options.  (SEC Complaint ¶ 16).  It is perplexing, then, that in this criminal case, where Mr. Ruehle's liberty is on the line, the prosecution would choose to be more vague in its pleadings about the alleged conduct than its own partner was in a civil case.  The prosecution's coyness with respect to the "rules" has extended into discovery negotiations, where the prosecution has refused to identify a single "rule" referenced in its indictment on the odd ground that the Mr. Ruehle's request for specifics is "improperly designed to limit the government's proof at trial."  (Declaration of Richard Marmaro, Ex. 1, Letter dated September 29, 2008 from Andrew Stolper letter to Richard Marmaro, at 2).

Even more perplexing is the prosecution's omission of any allegation that Mr. Ruehle knowingly violated the unspecified "rules" referenced in the indictment.  The prosecution intentionally used the word knowingly in its description of the facts and circumstances of the alleged conspiracy – both in reference to the creation of corporate records.  The prosecution therefore appears to have been deliberate and sparing in its allegations of knowing conduct.  If deliberate, the prosecution's omission of any reference to Mr. Ruehle's knowing violation of the unspecified "rules" at the center of its case suggests that the prosecution failed to present evidence to the grand jury to support a knowing violation of the "rules."  This in turn indicates that the prosecution lacks evidence on this crucial point and hopes to lower the evidentiary bar through its allegations.  Such tactics cannot be countenanced.  The prosecution's theory requires it to both allege and

prove a knowing and intentional violation of the "rules" at the heart of its conspiracy count. Its failure to so allege is fatal to that count.

### D. Why Dismissal Is Necessary

No doubt, the prosecution will respond this motion is an effort to leverage a mere technicality or demand an unreasonable level of detail in indictments. The Ninth Circuit begs to differ.

"The complete failure to charge an essential element of a crime . . . 'is by no means a mere technicality.'" United States v. Du Bo, 186 F.3d 1177, 1179-80 (9th Cir. 1999). ("We may only guess whether the grand jury received evidence of, and actually passed on, Du Bo's intent. We may never know if the grand jury would have been willing to ascribe criminal intent to Du Bo.") (citation omitted). An indictment "must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." United States v. Cecil, 608 F.2d 1294, 1296-97 (9th Cir. 1979). The purpose of this requirement is two-fold: (1) to provide sufficient information to enable the defendant to prepare a defense and (2) to assure the defendant that his prosecution is based on facts presented before the grand jury. Id. at 1297; United States v. Rohrer, 708 F.2d 429, 435 n.7 (9th Cir. 1983).

This indictment fails to accomplish either of these two purposes. It fails to provide Mr. Ruehle or Dr. Nicholas with any notice concerning the "rules" that the prosecution asserts the defendants committed fraud by violating. Absent this information, Mr. Ruehle and Dr. Nicholas cannot prepare their defense because they have been left to guess at what "rules" the prosecution seeks to try them for violating. Likewise, the failure to allege a knowing violation of these "rules" leaves the defense without notice as to whether the prosecution believes that any alleged violation of these "rules" was knowing and intentional. Without clarity on that central point, the indictment fails to "apprise [Mr. Ruehle] sufficiently of that which [he] must be prepared to meet at trial." United States v. Cuevas, No. 07-50230, 2008 U.S. App. LEXIS 15337, at **1-2 (9th Cir. July 17, 2008)

(dismissal of false statement charge appropriate where false statement not adequately described in indictment).

Most importantly, the omission of both of these two critical elements from the indictment raises real questions about whether the prosecution will be based on facts presented to the grand jury. Du Bo, 186 F.3d 1177-79-80. Did the grand jury reach its decision to indict in the absence of any factual allegations concerning the so-called "rules" at issue or evidence of Mr. Ruehle's knowing violation of those "rules"? The indictment does not answer this crucial question and thereby fails to "ensure that [Mr. Ruehle will be] prosecuted on the same facts actually presented to the grand jury which indicted [him]." Cuevas, 2008 U.S. App. LEXIS 15337, at *2. Mr. Ruehle and the Court are thus left to guess whether the grand jury received any evidence of Mr. Ruehle's knowledge of and intent to violate the applicable accounting opinions, and whether they found that the prosecution had proved that he had the requisite knowledge and intent. Du Bo, 186 F.3d at 1179-80.

The conspiracy count is not rescued by the prosecution's inclusion of the word "knowingly" in its generic recitation of the objects of the conspiracy. (Indictment ¶ 18). The Ninth Circuit requires more than just a recitation of the elements of the offense in a conspiracy charge – it demands that "the necessary facts appear in *any form or by fair construction* can be found within the terms of the indictment." United States v. James, 980 F.2d 1314, 1317 (9th Cir. 1992) (citation and internal quotation marks omitted, emphasis in original). Despite the prosecution's general invocation of the word "knowingly," the necessary facts underlying that word are nowhere to be found in its conspiracy count.[3]

It would be one thing if the indictment simply omitted a minor, inconsequential detail, or offered more detail in one important area but was sparse in another ancillary area.

---

[3] Likewise, the actual presentation of evidence of knowledge to the grand jury will not cure a failure to sufficiently allege an essential element of a crime. United States v. Kurka, 818 F.2d 1427, 1428 (9th Cir. 1987).

1  But that is not what happened here.  The prosecution left out of its conspiracy count
2  allegations regarding essential elements of the alleged conspiracy.
3      Allegations of knowledge and intent are always essential to any criminal conspiracy
4  charge, but they are even more important in this case because the prosecution's theory of
5  the case rests entirely on certain non-criminal accounting opinions and allegations that Mr.
6  Ruehle and Dr. Nicholas knowingly and intentionally violated them.  Simply put, without
7  these opinions and the knowing and intentional violation of them, the prosecution's
8  conspiracy charge cannot stand.
9      The prosecution thus failed to heed the well-established rule that "[i]f a general
10 description of the offense is given then it is also necessary to allege facts and
11 circumstances which will inform the defendant of the specific offense with which he is
12 being charged."  Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989); see also
13 Cecil, 608 F.2d at 1296.  The prosecution here did the former but not the latter, and
14 thereby deprived the conspiracy count of what it needs to survive a motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, Count One of the indictment should be dismissed in its entirety.

DATED:  October 20, 2008

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                    Richard Marmaro
                    Jack P. DiCanio
                    Matthew E. Sloan
                    Matthew D. Umhofer

                    By:     /s/ Richard Marmaro
                        RICHARD MARMARO
                        Attorneys for Defendant
                        William J. Ruehle

## PROOF OF SERVICE

I hereby certify, that I caused the foregoing to be filed with the Clerk of the Court by using the ECF system which sent notification of the filing to the following:

      Brendan V. Sullivan Jr.
      WILLIAMS & CONNOLLY LLP
      725 Twelfth St., N.W., Washington, D.C. 20005

      Robb C. Adkins
      UNITED STATES ATTORNEY'S OFFICE
      411 W. Fourth St, 8th Flr, Santa Ana, CA  92701

                By:      /s/ Richard Marmaro
                        RICHARD MARMARO