**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: SACR 08-00139 CJC** |
| **Plaintiff,** | |
| **vs.** | |
| **HENRY T. NICHOLAS, III and WILLIAM J. RUEHLE et al.** | **ORDER REGARDING DEFENDANTS' PRE-TRIAL MOTIONS** |
| **Defendants.** | |

## INTRODUCTION

On June 4, 2008, a grand jury returned an indictment related to the backdating of stock options ("Indictment") at Broadcom Corporation ("Broadcom") against Defendants Henry T. Nicholas, III ("Dr. Nicholas") and William J. Ruehle ("Mr. Ruehle") (collectively "Defendants"). As a broad overview, the Indictment alleges a scheme to "disguise, conceal, understate, and mischaracterize compensation expenses Broadcom

was required to recognize in connection with its stock options."  (Indictment ¶ 15.)  "By fraudulently backdating and repricing option grants," the Indictment alleges, "[Dr. Nicholas and Mr. Ruehle] and their co-conspirators deceived Broadcom's shareholders, potential shareholders, and auditors" about $2.2 billion in unreported employee compensation expenses.  (Indictment ¶¶ 15d, 17.)  The scope of the alleged scheme was extensive, resulting in "tens of millions of backdated in-the-money and repriced options." (Indictment ¶ 15c.)

Before the Court are numerous motions brought by Defendants.  These motions include challenges to the sufficiency of the Indictment, requests for information related to the grand jury, motions regarding alleged prosecutorial misconduct, and other motions regarding peremptory challenges and the filing of additional motions should it become necessary.  For the following reasons, Defendants' motions are DENIED, with the exception of the motion for access to certain grand jury records, which is GRANTED in part.

**ANALYSIS**

**I. Challenges to the Indictment**

    **A. The Government's Indictment**

The government's sixty-five-page Indictment includes twenty-one counts.  Count 1 of the Indictment charges Dr. Nicholas and Mr. Ruehle with conspiracy, the objects of which include the following offenses: securities fraud; filing false reports with the Securities and Exchange Commission ("SEC"); accounting fraud; lying to outside auditors; honest services mail and wire fraud.  (Indictment ¶ 18.)  The government alleges that Dr. Nicholas and Mr. Ruehle "falsely claimed that the Option Committee met on"

specific past dates "to make it appear" that in-the-money grants were made at-the-money; "repriced options to more favorable strike prices without taking required compensation expenses"; "circumvented Broadcom's Compensation Committee to backdate and reprice options without obtaining the Compensation Committee's contemporaneous permission"; "circumvented Broadcom's option plan and fraudulently concealed and mischaracterized expenses relating to option grants made to newly hired Broadcom employees by falsely making it appear that employees were hired to work at a company Broadcom was acquiring"; and created fraudulent corporate records. (Indictment ¶¶ 20-25.) Count 2 charges Defendants with securities fraud. Counts 3 through 7 charge Defendants with falsely certifying financial reports. Counts 8 and 9 charge Defendants with making false statements in reports filed with the SEC. Counts 10 through 12 charge Defendants with lying to accountants. Counts 13 through 17 charge Defendants with falsification of corporate books and records. Counts 18 through 21 charge Defendants with honest services mail and wire fraud.

**B. Federal Rule of Criminal Procedure 7(c)**

Federal Rule of Criminal Procedure 7(c) requires that an indictment contain only "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c). The Supreme Court has noted that an indictment has two essential purposes: first, it must contain "the elements of the offense charged and fairly inform[] a defendant of the charge against him which he must defend," and second, the indictment must "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Although an indictment must serve these functions, the indictment need not contain particulars above and beyond those necessary to put the defendant on notice of the charges against him. *See United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987). Finally, an indictment returned by a properly constituted, unbiased grand jury cannot be

challenged on the basis of the adequacy or competency of the evidence before the grand jury. *Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

**C. Defendants' Motions Challenging the Indictment**

Defendants' motion to dismiss Counts 1-4, 8-11, and 18-21 on the ground that the alleged false statements and acts of concealment are immaterial as a matter of law is DENIED. Defendants argue that because the price of Broadcom stock increased when Broadcom announced its restatement, the alleged false statements and alleged acts of concealment are immaterial as a matter of law. This argument fails because materiality is a question of fact that must be decided by a jury. The Supreme Court has held that the determination of materiality is a fact-specific inquiry, which depends on whether there is a "substantial likelihood" that a reasonable investor would consider the information relevant. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988). In a criminal case, materiality is a question of fact that must be determined by a jury. *United States v. Gaudin*, 515 U.S. 506 (1995). In the context of a motion for summary judgment, the Ninth Circuit has held that statements or omissions may be material notwithstanding a lack of immediate market response after their disclosure to the public. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003). Finally, the Court does not agree with Defendants' contention that markets are necessarily characterized by informational efficiency. The Indictment properly alleges that the statements and acts of concealment are material. (Indictment ¶¶ 134, 136, 138, 141, 144, 148, 151.) Accordingly, the issue of materiality must be determined by the jury on the basis of the evidence presented at trial and proper instructions by the Court on the applicable law.

Defendants' motion to dismiss the third prong of Count 4 for failure to state an offense is DENIED.  Count 4 charges Defendants with materially misrepresenting the financial condition of the corporation in Broadcom's third quarter 2002 10-Q pursuant to 18 U.S.C. § 1350 by certifying that the 10-Q "fairly presented, in all material respects, the financial condition and results of operations of Broadcom."  (Indictment ¶ 136.)  The third prong of this Count refers to a specific representation that rendered the above certification false: the representation that all fraud "whether or not material" was disclosed.  Defendants argue that if the undisclosed fraud were immaterial, the certification that the 10-Q represented the financial condition of the corporation in all material respects would not be false.  Likewise, if the undisclosed fraud did not affect the financial condition of Broadcom, the certification that the 10-Q represented the financial condition of the corporation in all material respects would not be false.  The Court notes simply that the Indictment sufficiently alleges that Defendants materially misrepresented the financial condition of Broadcom by failing to disclose the allegedly fraudulent stock option granting practices.  The issue of materiality must be determined by the jury on the basis of the evidence presented at trial and proper instructions by the Court on the applicable law.[1]  *United States v. Gaudin*, 515 U.S. 506 (1955).

Defendants' motion to dismiss Counts 13-17 and the relevant portion of Count 1 for failure to allege materiality is DENIED.  Counts 13-17 charge falsification of corporate books and records in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff and 17 C.F.R. § 240.13b2-1.  Defendants argue that § 78ff(a) has an implied materiality requirement, and because the indictment fails to allege the materiality of the alleged falsification, Counts 13-17 and the portion of Count 1 that charges conspiracy to

---

[1]Mr. Ruehle's challenge to the second prong of Count Five, which refers to the same representation made in the 2002 10-K, is also DENIED for this reason.

commit these offenses must be dismissed.  The Court does not find Defendants' argument persuasive.  As Defendants concede, the plain text of the portion of the statute that defines the criminal penalties for the offense has no materiality requirement. 15 U.S.C. § 78ff(a).  Likewise, the legislative history does not suggest that the purpose of the statute is to punish solely material falsification of corporate records.  The statute was enacted not only to prevent materially false statements in government filings, but to increase confidence in corporate governance by requiring honest record-keeping.  *See United States v. Jensen*, 532 F. Supp. 2d 1187, 1198 (N.D. Cal. 2008) (citing S. Rep. 95-114 at 1-2 (1977)).  Finally, in the absence of textual support or support in the legislative history of the statute, the fact that the statute imposes criminal liability does not suggest that the statute has an implied materiality requirement.

Defendants' motion to dismiss Counts 13-17 for failure to allege that Defendants falsified corporate documents is DENIED.  Defendants argue that the Unanimous Written Consents ("UWCs"), which Defendants are charged with falsifying in Counts 13-17, are not false.  Defendants argue that the UWCs do not represent that a meeting occurred, as the Indictment alleges.  However, Defendants mischaracterize the crux of the government's case against them: the government alleges that the UWCs falsely represent that options grants were made at fair market value on the date of the grant.  The Indictment alleges that the UWCs falsely represent that grants were made "on the day contained in the UWC," the significance of which is that options grants appeared to have been made at fair market value when they were, in fact, not.  (Indictment ¶ 146.) Although Defendants may argue that the UWCs are not false and present evidence to support this position at trial, a defendant may not challenge an indictment on the basis of the sufficiency of the government's evidence.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).  The Indictment, properly returned by a grand jury, charges that the UWCs are false.  (Indictment ¶ 146.)  Thus, the issue of falsity must be decided by the

jury on the basis of the evidence presented at trial and proper instructions by the Court on the applicable law.

Defendants' motion to dismiss Counts 18-21 for failure to allege a cognizable mail or wire fraud offense is DENIED.  Defendants argue that an indictment for honest services mail or wire fraud must allege that the defendant engaged in self-dealing or received bribes or kickbacks, and allegations of a mere breach of a fiduciary duty are insufficient to support such a charge.  In advancing this argument, Defendants rely on precedent from other circuits holding that evidence of self-dealing or kickbacks is necessary to sustain a conviction for honest services mail or wire fraud.  *See United States v. Rybicki*, 354 F.3d 154 (2d Cir. 2003); *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006).  No Ninth Circuit authority suggests that specific allegations of self-dealing, bribery, or kickbacks are required in an indictment in order to properly charge honest services mail or wire fraud.  However, even if such allegations were required to sustain an indictment, the Indictment alleges self-dealing conduct: "during the period of the fraudulent scheme," Dr. Nicholas "sold more than $1 billion of his Broadcom stock," and Mr. Ruehle "was granted Broadcom options that were millions of dollars in-the-money at the time of their grant."  (Indictment ¶ 16.)  Thus, the Indictment is not deficient and adequately informs Defendants of the charges against them.

Defendants' motion to dismiss Counts 1 and 18-21 for failure to allege that Defendants acted willfully is DENIED.  In order to charge conspiracy and mail or wire fraud, the indictment must allege that the defendant acted with the requisite intent.  Conspiracy requires the intent to commit the substantive crime alleged.  *United States v. Sullivan*, 522 F.3d 967, 976 (9th Cir. 2008).  And wire or mail fraud requires the specific intent to defraud.  18 U.S.C. § 1341; *United States v. Bonallo*, 858 F.2d 1427, 1433 (9th Cir. 1988).  Count 1 charges Defendants with "knowingly" conspiring to commit the alleged offenses.  (Indictment ¶ 18.)  With respect to Counts 18-21, the Indictment

alleges that Defendants acted "knowingly and with the intent to defraud." (Indictment ¶ 148, 151.) Defendants fail to cite any legal authority to support the proposition that "knowingly" does not adequately describe the requisite mens rea for the offenses charged, and the Ninth Circuit Model Jury Instructions do not suggest that knowledge and willfulness are independent elements of either crime. Accordingly, Counts 1 and 18-21 properly allege the requisite intents for the crimes charged.

Defendants' motion to dismiss Count 2 for failure to properly allege securities fraud in violation of 18 U.S.C. § 1348 is DENIED. Defendants argue that Count 2 must be dismissed because it fails to allege a scheme to obtain money or property from an alleged victim through fraud. Section 1348 makes it a crime either to knowingly execute a scheme to defraud a person in connection with the sale of a security or to knowingly execute a scheme to obtain, by means of false pretenses, money or property in the connection with the sale of a security. 18 U.S.C. § 1348. Count 2 alleges that Defendants knowingly "participated in a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses . . . , in connection with the purchase and sale of Broadcom stock." (Indictment ¶ 134.) Count 1 of the Indictment, which is incorporated by reference in Count 2, details Defendants' scheme to conceal from shareholders the true value of the compensation being paid to Broadcom employees in the form of stock options. (Indictment ¶¶ 15-17.) The Indictment alleges a scheme to obtain money from Broadcom shareholders: the corporation used shareholders' money to compensate employees in the form of backdated or repriced options without disclosing this fact. Thus, the Indictment adequately alleges each element of securities fraud and informs Defendants of the charges against them.

Defendants' motion to dismiss Count 2 as a violation of the Ex Post Facto Clause is DENIED. Defendants argue that because the Indictment alleges conduct that predates the enactment of the statute under which they are charged in Count 2, Count 2 must be

dismissed as a violation of the Ex Post Facto Clause of the United States Constitution. However, Defendants' argument fails because Defendants' scheme to defraud in violation of 18 U.S.C. § 1348 is a continuing offense, and the Indictment alleges conduct that persists past the effective date of the statute.  The Ex Post Facto Clause does not bar prosecution for an offense that is commenced prior to the enactment of the statute but persists beyond the effective date if the crime is a "continuing offense."  *United States v. Kubick*, 205 F.3d 1117, 1129 (9th Cir. 1999) (conspiracy); *United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir. 1997) (bank fraud based on scheme to defraud).  The Indictment alleges that Defendants' continuing "scheme to defraud" began "no later than" July 30, 2002—the date of the statute's enactment—and continued through "at least" March 1, 2005.  (Indictment ¶ 134.)  Moreover, Count 1 of the Indictment, incorporated by reference in Count 2, alleges numerous acts in furtherance of the scheme that occurred after July 30, 2002, including backdating, falsification of SEC filings, and creation of false corporate records.  (Indictment ¶ 132, Overt Acts Nos. 56-67.) Accordingly, Count 2 does not violate Defendants' rights under the Ex Post Facto Clause.

Defendants' motion to dismiss Counts 10 and 11 for failure to state an offense is DENIED.  Counts 10 and 11 charge Defendants with making false statements to Broadcom's accountants in violation of 17 C.F.R. § 240.13b2-2 ("Rule 13b2-2"), which prohibits directors and officers from making materially false statements to outside auditors.  Defendants argue that until the passage of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), the SEC lacked authority to regulate statements to auditors.  And until the re-enactment of Rule 13b2-2 in June 2003 pursuant to Sarbanes-Oxley, to the extent that the prior version of Rule 132b-2 purported to criminalize lying to auditors, it was invalid.  Accordingly, Defendants argue, Counts 10 and 11 must be dismissed. Defendants' argument fails because the SEC was authorized to promulgate Rule 13b2-2 prior to the enactment of Sarbanes-Oxley.  Congress expressly granted the SEC the authority "to make such rules and regulations as may be necessary or appropriate to

implement" the securities laws, and Rule 13b2-2, which regulates statement made by officers and directors to outside auditors, is an appropriate exercise of rulemaking authority.  15 U.S.C. § 78w(a)(1).  The fact that Sarbanes-Oxley expressly expanded the SEC's authority to regulate the relationship between corporate insiders and outside auditors does not indicate the SEC initially exceeded its authority in promulgating Rule 13b2-2, but suggests that Congress believed the SEC had not gone far enough in its prior rulemaking.  *United States v. Reyes*, No. C 06-00556, 2007 WL 1574540, at *2 (N.D. Cal. May 30, 2007).

Defendants' motion to dismiss Counts 2, 10-11, 18-21, and portions of Counts 3-4 as unconstitutionally vague is DENIED.  Defendants argue that the Indictment fails to identify specific alleged false statements and does not allege in what respect these alleged statements are false.  An indictment must "contain[] the elements of the offense charged and fairly inform[] [Defendants] of the charge against which [they] must defend."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  However, an indictment need not contain particulars above and beyond those necessary to put the defendant on notice of the charges against him.  *See United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987).  Each of the challenged counts sufficiently identifies the conduct that forms the basis for the charges and adequately informs Defendants of the charges against which they must defend.  Count 1, incorporated by reference in each challenged count, details Defendants' alleged scheme and the specific statements and conduct that form the basis of the charges.  (Indictment ¶¶ 1-127.)  Likewise, the challenged counts each specify the particular conduct on which the charges are based.  (Indictment ¶¶ 134, 136, 144, 149, 152.)  Finally, the government has produced the documents that contain the allegedly false statements.  (Gov.'s Opp. at 101.)  Accordingly, the Indictment and discovery to date adequately provide Defendants with notice of the charges against which they must defend.

Defendants' motion to dismiss Count 1 for failure to plead conspiracy with sufficient detail is DENIED.  Defendants argue that the government's failure to identify the specific accounting rules that the Indictment alleges Defendants violated renders the Indictment defective.  However, the Indictment "contains the elements of the offense charged and fairly informs [Defendants] of the charge against which [they] must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  First, Count 1 alleges the elements of conspiracy: an agreement to engage in criminal conduct; overt acts taken in furtherance of the agreement; the intent to commit the substantive crime(s).  (Indictment ¶¶ 18, 132.) Second, the Indictment describes the rules and accounting principles Defendants allegedly violated in the course of the alleged conspiracy such that Defendants may defend against these allegations.  (Indictment ¶¶ 11-14.)

Defendants' motion for a bill of particulars is DENIED.  Defendants argue that they are entitled to a bill of particulars, including: the names of unidentified co-conspirators; additional information about option grants in Counts 1 and 2; additional information about alleged false statements in Counts 1-4, 10-11, and 18-21; and additional information about alleged omissions in Counts 1-2 and 18-21.  Under Rule 7(f) of the Federal Rules of Criminal Procedure, a district court may, in its discretion, order the government to provide a defendant with a bill of particulars.  FED. R. CRIM. P. 7(f). "A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense" and "[i]t is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).  "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Id.*  As stated above, the Court finds that the government has provided Defendants with notice of the charges against which they must defend by detailing the conduct that is the basis for the

charges in its sixty-five-page Indictment and providing Defendants with extensive discovery. However, Defendants are entitled to the statements of co-conspirators that the government intends to use at trial pursuant to the Jencks Act. The government should produce this information promptly so that Defendants may prepare for trial. In order to prevent the possibility of unfair prejudice to Defendants, the government's evidence at trial will be limited by the charges and allegations of the Indictment and the information disclosed to Defendants pursuant to the Jencks Act and Rule 16 of the Federal Rules of Criminal Procedure. The required disclosures will be sufficient to allow Defendants to prepare their defense, and their timely disclosure will allow for efficient trial preparation. Accordingly, a bill of particulars is neither necessary to inform Defendants of the charges against them nor to aid in the preparation of their defense.

Defendants' motion to compel election among multiplicitous counts is DENIED. Counts 8 and 9 charge Defendants with making false statements in reports filed with the SEC pursuant to 15 U.S.C. §§ 78m(a)(2) and 78ff. The basis for these charges is the same allegedly false representation—the price of the stock purportedly granted on July 3, 2002 and August 5, 2002 was the fair market value on the date of the grant. Defendants made this affirmative representation in both the second and third quarter 2002 10-Q forms. (Indictment ¶¶ 139, 142.) Defendants argue that they may only be charged once on the basis of the same allegedly false representation. Where the same allegedly false statement is the basis for multiple charges under the same statute, the Court must examine what Congress intended as the "allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). Section 78ff indicates that Congress intended to impose criminal liability for "any" materially false or misleading statement made in a required filing. 15 U.S.C. § 78ff(a). A plain reading of the text of the statute suggests that the each SEC filing constitutes the allowable unit of prosecution. Moreover, with respect to false statements charged under 18 U.S.C. § 1001, which governs false statements made to government officials, the Ninth Circuit has held that

"[t]he government may charge separate violations for identical false statements if: (1) the declarant was asked the same question and gave the same answer; and (2) the later false statement further impaired the operations of the government."  *United States v. Stewart*, 420 F.3d 1007, 1013 (9th Cir. 2005).  Here, the repetition of the allegedly false representation in the third quarter 2002 10-Q further impaired the ability of shareholders—the people whom Section 78ff was intended to protect—to detect the alleged fraud at Broadcom.  Accordingly, Counts 8 and 9 are not multiplicitous.

## II. Requests for Grand Jury Information

Defendants' motion to dismiss and for disclosure of grand jury transcripts due to grand jury abuses is DENIED.  Defendants argue that the Indictment contains erroneous factual allegations regarding the alleged falsification of UWCs, and these inaccuracies evidence prosecutorial misconduct: the deliberate presentation of misleading evidence to the grand jury.  This alleged misconduct, they argue, gives rise to a need for grand jury transcripts.  A court may authorize the disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  FED. R. CRIM. P. 6(e)(3)(E)(ii).  The proper functioning of the grand jury depends on secrecy, and Defendants must show "particularized need" in order to justify the disclosure of grand jury transcripts.  *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958).  Defendants' allegations fail to satisfy this rigorous legal burden.  As the Court stated above, Defendants' contention that the UWCs are not false does not provide a basis to dismiss the Indictment.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).  And "[d]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented."  *United States v. Thompson*, 576 F.2d 784, 786 (9th Cir. 1978).  Defendants make no such showing of egregious conduct.  Their defense to the allegations levied in the

Indictment—that the UWCs are not false—presents an issue that must be resolved by a jury on the basis of the evidence presented at trial. Absent credible evidence implicating a legitimate basis for dismissal of the Indictment, the Court has an obligation to protect the secrecy of grand jury proceedings.

Defendants' motion for a hearing regarding the financial interests and employment of grand jurors and to dismiss the Indictment if the grand jury included biased jurors is DENIED. Defendants argue that no one who owned—directly or indirectly through a pension plan or mutual fund—Broadcom stock, no one whose spouse or close relative owned Broadcom stock, and no one who was the victim of any other alleged backdating scheme or securities fraud could have been an unbiased grand juror. Defendants also request an evidentiary hearing regarding the financial interests and employment of grand jurors to determine if any of them harbored biases. Defendants have not offered any authority to support their argument that disclosure of the financial interests of grand jurors is required, and the Clerk's office does not have this information in any event. Notwithstanding the foregoing, the Court will order the Clerk's office to provide the parties with the information, if any, grand jurors provided regarding their employment. With respect to Defendants' requests for an evidentiary hearing and dismissal of the Indictment, a district court may not dismiss an indictment for error in a grand jury proceeding unless the error prejudiced the defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Furthermore, "[s]ubstantial proof of grand jury bias is required to overturn an indictment." *United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997). Since Defendants have not made a showing of either actual bias or prejudice, an evidentiary hearing is unnecessary and dismissal of the Indictment is unwarranted.

Defendants' motion for an order granting access to certain ministerial and grand jury selection records is GRANTED in part. Defendants request: (1) all data or documents relating to the empaneling of the grand jury; (2) all data or documents relating

to the response rate of the jurors summoned to serve on the grand jury; (3) all data or documents relating to efforts to enforce the obligations of persons summoned; (4) all data relating generally to the response rate of jurors summoned to serve on grand or petit juries in the Central District of California ("District"); (5) data, documents, or analyses relating to the problem of jurors failing to respond to summonses.  Defendants also request various other records, including: (1) orders reflecting the term of any grand jury investigating Defendants; (2) records relating to the method of empaneling the grand jury; (3) a transcript of the instructions and charges to the grand jury; (4) disclosure of the names of persons receiving information about matters before the grand jury; (5) any report relating to the selection process of the pool from which the grand jurors were selected; and (6) transcripts of the return of the Indictment.  The Jury Service and Selection Act of 1968 ("JSSA") allows defendants to access jury selection materials that are necessary to support a challenge to a jury selection plan.  28 U.S.C. § 1867(f). Pursuant to the JSSA, the Court orders the Clerk's office to provide to the parties and to unseal, if necessary, the following information: (1) information reflecting the beginning date of the grand jury that issued the Indictment;[1] (2) the JS-12 form for the Southern Division of the District; (3) an expedited transcript of the return of the Indictment from June 4, 2008 (with information regarding other cases redacted); (4) the Jury Selection Plan for the District in effect when the grand jury was empaneled; (5) a transcript of the grand jury minutes of the grand jury that returned the Indictment; (6) the memorandum summarizing the response rates of potential jurors summoned to serve on the grand jury that returned the Indictment; (7) a summary of the bi-monthly response rates to petit jury summonses in the Southern Division of the District in 2008; and (8) copies of the follow-up and reminder letters sent to potential jurors who failed to respond to summonses.[2]  The

---

[1] The grand jury that issued the Indictment was not extended.

[2] The original source list contains the over one million registered voters in Orange County.

Court also orders the Office of the United States Attorney to provide a transcript of the instructions and charges to the grand jury.

## III. Alleged Prosecutorial Misconduct

Defendants' motion sets forth some serious, albeit conclusory, allegations of prosecutorial misconduct.  Specifically, Defendants allege that the government: (1) leaked secret grand jury details and documents to the media that prejudiced Defendants; (2) issued an illegitimate subpoena to Nancy Tullos' employer, causing her to lose her job; (3) proposed a guilty plea, which the Court accepted, to a crime that does not exist; (4) engaged in improper conduct with respect to witnesses; and (5) improperly presented the allegations regarding narcotics and backdating to the same grand jury.  Because Defendants fail to provide sufficient legal and factual bases for the relief they seek, Defendants' motions to dismiss and for an evidentiary hearing on the basis of alleged prosecutorial misconduct are DENIED.  And because Defendants cannot show any particularized need for grand jury materials absent sufficient evidence of prosecutorial misconduct, Defendants motion for disclosure of grand jury materials is also DENIED.[3]

First, Defendants have failed to justify any relief stemming from the allegations regarding grand jury leaks because they have neither established a *prima facie* violation of Rule 6(e), *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989), nor any prejudice to Defendants.  To establish a *prima facie* violation, the moving party must put forward evidence that "the media reports disclosed information about matters before the grand jury and indicated that the sources of the information included attorneys and agents of the government."  *Id.*  (*quoting United States v. Eisenberg*, 711 F.2d 959, 963 (11th Cir. 1983)) (internal quotations omitted).  A court must, at the least, examine (1) whether

---

[3] Finally, Mr. Ruehle's motion to strike the government's sur-reply to Defendants' motions is DENIED.

matters occurring before the grand jury have been disclosed; (2) whether the disclosure implicates a prohibited source under Rule 6(e)(2); and (3) evidence presented by the government to rebut allegations of the violation. *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). Neither the *Los Angeles Times* article nor the *Wall Street Journal* article that Defendants cite refers to the grand jury investigation, the articles do not disclose matters allegedly occurring before the grand jury, and Defendants have not provided evidence to suggest that the emails printed in the *Wall Street Journal* implicate a prohibited source. (Defs.'s Mot. Ex. 5.) Likewise, calling the general counsel of QLogic to ask if he was the appropriate person to accept service of a grand jury subpoena is not a violation of Rule 6(e). Finally, Defendants fail to demonstrate any "specific proof of prejudice of the grand jury" that returned the indictment stemming from the alleged leaks, *United States v. Kaczynski*, 923 F. Supp. 161 (D. Mont. 1996), nor that the alleged leaks "substantially influenced" the grand jury's decision to indict, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Defendants had been the subjects of media scrutiny regarding stock options backdating prior to the publication of the allegedly leaked information. (Declaration of Andrew Stolper Ex. A.)

Second, Defendants cannot demonstrate that the subpoena issued to former-Broadcom employee Ms. Tullos' post-Broadcom employer was an illegitimate use of the grand jury's broad investigative authority. A grand jury has broad investigative authority. Indeed, "[a] grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined." *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972). The government's stated purpose in subpoenaing Ms. Tullos' employment records from her post-Broadcom employer—to obtain the information she provided concerning her knowledge of the option granting processes at Broadcom—is legitimate. (Gov. Opp. at 179.)

Third, the government made no misrepresentations to the Court in connection with Ms. Tullos' guilty plea, and more particularly, whether there was an adequate factual basis to support Ms. Tullos' plea to obstruction of justice.  In *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005), the Supreme Court held that, in order to be guilty of obstruction of justice, one who persuades another to destroy documents must do so knowingly, corruptly, and with the intent to obstruct a government investigation in which he contemplates the documents will be material.  Insofar as the jury instructions informed the jury that one could be guilty of obstruction by persuading another to destroy documents pursuant a document retention policy without contemplating a proceeding in which the documents would be material, the instructions regarding the requisite mens rea were deficient.  *Id.*  Here, unlike *Arthur Andersen*, there are not competing explanations as to why Ms. Tullos ordered the document to be destroyed, and her intent is not in dispute.  Ms. Tullos admitted that she ordered the destruction of a document, not pursuant to a document retention policy, but solely to prevent its availability for use in an official proceeding.  Specifically, she directed another to destroy a document with knowledge that it could "damage Broadcom if the United States Department of Justice or other federal agencies were to obtain it as part of any official proceeding" and with intent to "avoid that outcome." (Plea Agreement for Defendant Nancy Tullos, Nov. 30, 2007 ¶ 8.) This constitutes a sufficient factual basis for the crime of obstruction of justice. [4]

---

[4] Defendants cite an article appearing in the *New York Law Journal* written by Matthew L. Levine that criticizes the Court's acceptance of Ms. Tullos' guilty plea.  Mr. Levine suggests that a corporate officer, before an official proceeding is "foreseeable," can lawfully destroy an incriminating document solely to thwart its availability for use by federal authorities in an official proceeding.  Contrary to Mr. Levine's criticism of the Court, a corporate officer does not have a license to destroy incriminating documents with absolute impunity just because a federal investigation of the corporate officer's criminal wrongdoing is not yet pending or about to be instituted.  And even accepting Mr. Levine's debatable reading of *Arthur Andersen*, a federal investigation of a publicly traded corporation, which is subject to strict oversight and extensive disclosure requirements, is arguably foreseeable if its officer is engaging in criminal wrongdoing.

Fourth, Defendants have not provided sufficient evidence that the government engaged in misconduct with respect to potential witnesses in its case against Defendants. Defendants have not provided sufficient evidence to suggest that the government's decisions regarding providing witness letters constitute misconduct.  With respect to Ms. Collins' allegedly coerced testimony, the government did not condition Ms. Collins' non-target status on specific testimony; rather, the government provided Ms. Collins with a witness letter after Ms. Collins confirmed that she would not provide the information defendants allege the government demanded.  Likewise, Defendants have not provided sufficient evidence that the government's charging decisions with respect to Dr. Samueli or Mr. Dull were aimed at preventing them from providing testimony helpful to Defendants' case.

Fifth, Defendants have not shown that it was improper for the government to present the narcotics indictment and the stock options indictment to the same grand jury. In the absence of evidence of misconduct, the Court presumes the proper functioning of the grand jury and will not look behind the face of an indictment properly returned by an unbiased grand jury.  *See United States v. DeLuca*, 692 F.2d 1277, 1280 (9th Cir. 1982). Defendants fail to demonstrate how presentation of both indictments to a single grand jury constituted misconduct on the government's part or resulted in prejudice to Defendants.

**IV. Additional Motions**

Defendant Nicholas' motion for a protective order is DENIED.  Defendants challenge the use of a "dirty team"—which includes government attorneys who are walled off from the prosecution team—to review potentially privileged documents.   The government obtained a warrant to search emails sent and received by Dr. Nicholas and Dr. Samueli ("Broadcom Emails").  The warrant, approved by Magistrate Judge

Nakazato, includes the procedure for the review of potentially privileged information. The government agrees to the following modifications to the procedures set forth in the warrant in order to allay Dr. Nicholas' concerns about the review of potentially privileged information: (1) the dirty team may work with Broadcom's counsel to separate potentially privileged communications, and the government's cooperation with Broadcom's counsel will not constitute a waiver of Dr. Nicholas' privileges, if any; and (2) the dirty team will provide Dr. Nicholas an opportunity to review any documents before turning the documents over to the prosecution team, and Dr. Nicholas may bring an under-seal motion for a protective order within ten days in order to protect any document he deems privileged.  The procedure set forth in the search warrant with these two modifications strikes the appropriate balance between protecting Dr. Nicholas' interest in protecting potentially privileged communications and the government's interest in efficiently reviewing the Broadcom Emails.

Defendants' motion for an order granting additional peremptory challenges is DENIED.  This is not a capital case and Defendants do not need twenty peremptory challenges to perspective jurors.  The Court anticipates empaneling sixteen jurors. Pursuant to Federal Rule of Criminal Procedure 24, Defendants jointly have twelve peremptory challenges, and the government has eight peremptory challenges.

Defendant Nicholas' motion for leave to file additional motions is DENIED WITHOUT PREJUDICE.  The Court will consider whether leave to file additional motions is appropriate if and when the need arises.

DATED:     December 15, 2008

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

-20-